JOHN BONNER, plaintiff in error, *vs.* J. B. MARTIN, administrator, defendant in error.

A obtained judgment against B, in October, 1867, upon a note given during the war for "borrowed Confederate money." B, after the passage of· the Act known as the "Relief Law," filed his application to open the judgment upon the ground, among others, that in 1863 he tendered to A the full amount of principal and interest due on the note, adding to that a sum sufficient to make up the depreciation of said currency, and that the non-payment of the debt was owing to the refusal of plaintiff to receive the money so tendered; that in May, 1865, he tendered to the plaintiff the full value of said debt, according to the usual rule of scaling in United States currency, which was refused, and that the non-payment of said debt at that time was owing to said refusal: *Held*, that this created an equity in favor of B, which by the strict rules of law in relation to tender, in existence at the time the judgment was rendered, he was not able to set up as a defense, and that the Act of the Legislature providing for the opening of the judgment to let in this equitable defence is constitutional.—WARNER, J., dissenting.

Constitutional Law.    Relief Act.    Before Judge BIGBY. Carroll Superior Court.    April Term, 1869.

In October, 1867, Martin, as administrator, obtained a judgment against Bonner.    In April, 1869, Bonner moved, under the 2d section of the Relief Act of 1868, to submit said judgment to a jury, with a view of having its amount reduced.    The grounds upon which the motion was based were these: the judgment was upon a debt contracted before June, 1865, the consideration of which was a loan of Confederate Treasury notes to Bonner, that at the date of the contract Bonner owned twelve slaves, a carriage and horses and mules, upon the faith of which this credit was given,

and which property was lost and destroyed "without his default" by the late war and the incidents thereto;" because Bonner, in 1863, tendered, in Confederate Treasury notes the principal and interest due on said debt, *plus* a sum equal to the depreciation of said currency, and again, in May, 1866, tendered, in United States currency, "the full value of said debt according to the scale prescribed, and that plaintiff refused said tenders, and for that reason the debt remained unpaid."

This motion was demurred to, the demurrer was sustained, and the *fi. fa.* was ordered to proceed, upon the ground that said section of the Relief Act was unconstitutional, because in conflict with the 31st section of the 1st Article, and the 5th and 6th sections of the 11th Article of the Constitution of Georgia, and the 10th section of the 1st Article of the Constitution of the United States. This is assigned as error.

(This case was argued at June Term, 1869, but was held up by the Court.)

AUSTIN & REESE, for plaintiff in error.

W. W. & H. F. MERRILL, for defendant in error.

BROWN, C. J.

I think the Court erred in dismissing the motion to open this judgment, and in ordering the *fi. fa.* to proceed. The bill of exceptions shows that the defendant proposed to prove that the note upon which the judgment was obtained, was given prior to 1st June, 1865, that the consideration was "borrowed Confederate money," and that, in 1863, the defendant tendered to the plaintiff the principal and interest of said debt in Confederate money, adding thereto a sum sufficient to make up the depreciation of said currency, and that the non-payment of said debt was owing to the refusal of the plaintiff to receive the money tendered or offered to be tendered; and that, in May, 1866, before the judgment was obtained, he tendered to the plaintiff, in United States currency, the full value of the contract, according to the

Bonner *vs.* Martin.

usual rule of scaling, which the plaintiff refused to accept, which was the cause of the non-payment at that time.

Now here is a strong equity in favor of the defendant, which, by the strict rules of law on the subject of tender, in existence at the time of the rendition of the judgment, could not have been set up by him. The Relief Act has changed the rule of evidence, and now allows such facts to be given in proof to the jury, and provides that the judgment in such cases as this may be opened, for the purpose of letting in the defense. Under the rule which I have discussed more fully in the cases of *White vs. Herndon* and *White vs. Rucker*, (see next two cases,) I think this judgment should have been opened, and the evidence should have been submitted to the jury. If the plea as set up is sustained by the proof, it shows that the defendant has offered to do equity in the fullest sense of the term, which was not accepted by the plaintiff, and that the plaintiff has availed himself of an unconscionable advantage under the strict rules of law in existence at the time, in the enjoyment of which he should not be protected by the estoppel of this judgment.

This doctrine that the Legislature of a State may provide for opening or setting aside a judgment rendered by the Courts is not new in American jurisprudence. The case of Satterlee vs. Matthewson, 2 Peters' Reports, was of this character. Matthewson brought an action of ejectment against Satterlee, in the Courts of Pennsylvania, for the recovery of a track of land held under a Connecticut title. Upon the trial it appeared that the relation of landlord and tenant existed between them under that title, and the Court of the county where the land lay, held that the defendant could not set up a Pennsylvania grant obtained since the relation of landlord and tenant existed, as the tenant could not dispute the title of his landlord. The case was carried to the Supreme Court of Pennsylvania, and the judgment was reversed on the ground that "the relation of landlord and tenant could not exist between persons holding under a Connecticut title." The Legislature of Pennsylvania, a few days after the decision was made by the Supreme Court of the State, passed a statute declaring

that " the relation of landlord and tenant should exist, and be held as fully and effectually between Connecticut settlers and Pennsylvania claimants, as between citizens of the Commonwealth." After this Act was passed, the case came again before the Supreme Court of the State, and the judgment of the Court of Common Pleas in favor of the plaintiff in ejectment, was affirmed, that Court having decided that the Act of the Legislature was a Constitutional Act. The defendant in ejectment (Satterlee) then brought a writ of error to the Supreme Court of the United States, claiming that the Act of the Legislature, setting aside the judgment, impaired the obligation of the contract between himself and the State of Pennsylvania, whose grant he held. The Supreme Court of the United States affirmed the last judgment of the Supreme Court of Pennsylvania, and sustained the statute which set aside the first ruling. The Supreme Court held that there is nothing in the Constitution of the United States which applies to a State law, which divests rights vested by law in an individual, provided its effect be not to impair the obligation of a contract, and they held that this Act of the Legislature of Pennsylvania did not impair the obligation of the contract. And the last judgment of the Supreme Court, rendered in obedience to the Act of the Legislature, was affirmed in the Supreme Court of the United States.

The case of Mason vs. Haile, 12 Wheaton, 378, decided by the Supreme Court of the United States, is, if possible, a stronger case. Mr. Haile was in jail under a *ca. sa.* for debt, issued from a final judgment of a State Court in Rhode Island, and while he was so in prison, under the final process of the Court, the Legislature of that State, upon his petition, passed a resolution ordering the sheriff to discharge him from imprisonment without the payment of the debt, and he was discharged accordingly. The case was finally carried to the Supreme Court of the United States, and the question there was, whether this resolution of the Legislature impaired the obligation of the contract, and it was solemnly adjudicated that it did not. Mr Justice Thompson, delivering the opinion of the Court, assumes the position that this

was only an Act of the Legislature abolishing imprisonment for debt, by applying the remedy to an individual case, and proceeds to say: "This is a measure which must be regulated by the views of policy and expediency entertained by the State Legislatures. Such laws act merely upon the remedy, and that in *part only*. They do not take away the *entire remedy*, but only so far as imprisonment forms a part of the remedy." Let it be borne in mind that this Act of the Legislature interfered directly with the execution and enforcement of, a judgment rendered by the Courts, and released the defendant from the *ca. sa.* without payment.

The case of Calder vs. Bull, 3 Dallas, 386, is another forcible illustration of the doctrine that the Legislature may interfere, with the judgments of Courts when they do not thereby impair the obligation of a contract. In that case a will had been set aside by the judgment of the Probate Court, which established the title of the heirs-at-law to the estate of the deceased. The Legislature of the State of Connecticut, in which State the case arose, passed an Act ordering a new hearing in the Probate Court, which was had, and the will was established on the second trial. This divested the title of the heirs-at-law, which had vested under the former judgment of the Court, and transferred the estate to the legatees under the will; and the Supreme Court of the United States held that the Legislature had power to pass the Act, as it did not impair the obligation of a contract, but only divested rights vested by the first judgment of the Probate Court.

It is not necessary to go to the extent of these decisions of the Supreme Court of the United States to sustain the Act of the Legislature as applicable to the case at bar. Here the Act of the Legislature neither destroys the plaintiff's remedy, nor impairs any just or equitable right which he has in this judgment. It simply opens the judgment to let in strong equities which exist in favor of the defendant, the benefit of which was denied him by the strict rules of law in existence at the time of the trial. Neither the Statutes of the State, nor the Ordinance of the Convention, allowed him to give in evidence on the trial the tenders made by him, because they

were not strictly legal tenders under the laws in existence when made.

The Act authorizes and requires the Court to open the judgment, and allow him to set up these equities, and if the jury should believe the plaintiff has obtained an advantage by the judgment, which in equity and good conscience he ought not to have, they may reduce the amount of the judgment so as to do full justice between the parties. This can do wrong to no one. Beyond this the jury can not go, and if they should attempt it, to the injury of the just rights of the plaintiff, it will be the duty of the Court to correct their error by setting aside their verdict and granting a new trial under the well known rules applicable to such cases.

Judgment reversed.

McCAY, J., concurred. WARNER, J., dissented. See their opinions in *White vs. Herndon*, etc., the next cases *post.*